FILED
SUPERIOR COURT
OF GUAM

2024 DEC 11 PM 2: 18

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| WAYSON W.S. WONG, | CIVIL CASE NO. <u>CV0425-18</u> |
| Plaintiff, | |
| vs. | **DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL** |
| CYFRED, LTD. and LEONARD FRANCIS GILL aka FRANCIS GILL, | |
| Defendants. | |

Following a jury finding in favor of Plaintiff and Attorney Wayson W.S. Wong on their affirmative defense of fraud, Defendants Cyfred, Ltd. and Francis Gill move the Court for judgment as a matter of law or for a new trial. Upon review of the testimony and arguments presented at trial, as well as the parties' briefs, the Court determines that neither judgment as a matter of law nor a new trial are warranted, and DENIES the motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case concerns Wong's allegations that Defendants failed to pay on a Promissory Note in his favor, executed by Cyfred and guaranteed by Gill. The Note was one of several documents comprising a settlement between Cyfred, Wong's clients, and other persons and entities, relative to the Gill-Baza subdivision.[1] Dec. and Order re Pl.'s Mot. Partial Summ. J. at 1-2 (May 16, 2019).

---

[1] The Guam Supreme Court discussed the Note and this case in an Opinion issued last week— *Waathdad v. Cyfred, Ltd.*, 2024 Guam 6 ¶¶ 19-20. According to the Opinion, Wong intends to utilize sums awarded in this case to pay his clients' obligations owed in *Waathdad v. Cyfred, Ltd.*, CV0735-18.



During the summary judgment phase of this case, the Court determined that, assuming the Note is valid, there was no genuine issue of material fact that Wong accurately calculated amounts due under the Note. *Id.* at 12. However, the Court found that a jury must determine whether Wong committed fraud in obtaining the Note. *Id.* at 5-7.

The case proceeded to a two-week jury trial on Defendants' affirmative defense of fraud. Wong represented himself at trial. The jury determined that Defendants had not proven the first element of fraud, that is, that Wong had not made a representation as to his authority to act on behalf of his clients:

> **WE, THE JURY,** in the above-entitled case find the following Verdict on the questions submitted to us:
>
> **Question No. 1:** Did Wayson Wong represent that he had authority on behalf of UPIC, some or all of the 62 Homeowners, and/or the Abaloses to enter the Reconfirmed and Amended Settlement Agreement for the Gill-Baza Cases (Exhibit 3) ("Settlement Agreement")?
>
> Yes _____          No ___✓___
>
> If you answer Question No. 1 "no", stop here, answer no further questions, and have the presiding juror sign and date this form.
>
> If you answer Question No. 1 "yes", then answer question 2.

Verdict Form (May 13, 2024). Defendants had approved the language in the Verdict Form. 5/10/24 Hr'g at 10:06-07, 10:13. Following the verdict, Defendants filed the present motion seeking judgment as a matter of law, or alternatively, a new trial.

## II.  **MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants first seek an award of judgment as a matter of law, which may be issued if "there is no legally sufficient basis for a reasonable jury to find" on an issue presented. Guam R. Civ. P. 50(b)(1). Timewise, such motions must be made before submitting the case to the jury.

ORIGINAL

GRCP 50(a)(2). Wong argues that Defendants did not meet this time requirement; Defendants

fail to rebut this point. Pl.'s Memo. In Opp. at 2 (June 13, 2024); Defs.' Cyfred, Ltd. and Francis

Gill's Reply (July 18, 2024). Like Wong, the Court also fails to find any reference in the record

that Defendants moved for judgment as a matter of law during the trial. Accordingly, their Rule

50 motion is untimely.

## III.     <u>MOTION FOR A NEW TRIAL</u>

Defendants next argue that a new trial is warranted based on the substantial evidence

presented at trial, as well as misconduct by Wong, particularly during his closing arguments.

Guam law permits a new trial if there has been insufficient evidence presented to justify the

jury's verdict, an error at law, or if there has been an irregularity or error in the proceedings. 7

GCA § 21501. Regarding the sufficiency of the evidence, the test is whether the verdict is either

supported by substantial evidence or whether the jury's decision is against the clear weight of the

evidence. *Fenwick v. Watabe Guam, Inc.*, 2009 Guam 1 ¶ 6.

### A. Substantial Evidence Supports the Verdict.

#### 1. Substantial Evidence Indicated that Wong did not Make a Representation in the Reconfirmed and Amended Settlement Agreement for the Gill-Baza Cases.

The Court first addresses the nature of the evidence relative to the jury's finding that

Wong did not make a representation as to his authority to act on behalf of United Pacific

Islanders Corporation (UPIC), some or all of the 62 homeowners in the subdivision, and/or the

Abaloses in the "Reconfirmed and Amended Settlement Agreement for the Gill-Baza Cases,"

submitted to the jury as Exhibit 3. Signed by Gill, Gill on behalf of Cyfred, and Wong as

"Attorney for UPIC, the Homeowners and the Abaloses," the Reconfirmed and Amended

Settlement Agreement" intended to "continue to pursue [a] settlement" agreement, approval of



which had been denied by the Bankruptcy Court in Cyfred's bankruptcy case. Ex. 3 at Plt's Exh 121-23.

That original settlement agreement—known as the Settlement Agreement for the Gill-Baza Cases—was admitted as Exhibit 1. Within Exhibit 1, however, Wong is not a signatory and, therefore, could not have made any representations therein. Exhibit 1 does state that, "Except for this Agreement, any other documents needed to effect the intent of the parties to it and/or any provision of it may be signed . . . for UPIC and the Homeowners, by their attorney, including attorney Wong." Ex. 1 at Plt's Exh 029. Wong argued during the closing that because Gill signed Exhibit 1, like Wong's clients, Gill also agreed that Wong could sign subsequent documents relative to the settlement.

When read together, Exhibits 1 and 3 compelled a reasonable conclusion that it was Wong's clients, and not Wong, who made a representation as to his authority to sign Exhibit 3. When asked whether *Wong* made a representation relative to his authority to sign Exhibit 3, the jury could have reasonably relied on the documentary evidence which indicated that *Wong's clients* created that authority in Exhibit 1.

The Court recognizes other evidence that Defendants presented, which inferred that Wong made representations to Gill that he was authorized to sign Exhibit 3. However, as just noted, a reasonable construction of the documentary evidence supports the jury's verdict. As the verdict is not against the clear weight of the evidence, a new trial is not warranted.

## 2.  The Jury's Findings Were Not Against the Law or in Error.

Defendants also claim that the Court should grant a new trial because of the illegality of the Settlement Agreement (Exhibit 1)—a pure legal issue not raised in summary judgment

ORIGINAL

proceedings, other pretrial motions, or even in Defendants' Trial Brief. Defendants also fail to explain the standard of reviewing such an argument in a Rule 59 motion.

Even if the Court were to sua sponte review this issue by considering possibly applicable new trial justifications under 7 GCA § 21501—such as the verdict being against the law or in error—a new trial still would not be appropriate. Section 21501 is based on Section 657 of the California Civil Procedure Code. Cases interpreting that provision explain that a verdict is against the law (1) if there was a failure to find on a material issue, (2) when the jury's findings are irreconcilable, or (3) when the evidence is insufficient to support the decision or verdict. *Gaskill v. Pac. Hosp. of Long Beach*, 77 Cal. Rptr. 373, 376 (Ct. App. 1969). The first and second grounds do not apply as the jury has not failed to find a material issue or made a finding irreconcilable with any other finding. Lastly, the third ground has already been discussed above. Thus, the issue of the illegality of the Settlement Agreement is not a proper basis for a new trial under section 21501.

## B. Wong Did Not Commit Misconduct.

Finally, Defendants ask for a new trial because of Wong's alleged trial misconduct. In *HRC Guam Co. v. Bayview II L.L.C.*, 2017 Guam 25, the Guam Supreme Court established the standard for ordering a new trial due to inflammatory conduct by counsel during closing arguments before a jury. In that case, such actions included xenophobic comments, personal attacks, and personal opinions.

*HRC Guam Co.* also recognizes that counsel has "great latitude" when presenting their arguments: they may exercise earnestness, vigor, energy, and spontaneity. *Id.* ¶ 95. Thus, only extreme misconduct warrants a mistrial. *Id.* ¶ 116. In examining if misconduct justifies a new



trial, the court must examine the general atmosphere of the trial and the efficacy of curative instructions or admonitions. *Id.* ¶ 114.

During Wong's closing and rebuttal arguments, Defendants lodged objections twenty-three times. Most objections complained that Wong was discussing facts or issues not raised during the trial. In response, the Court reminded the jury to consider all admitted exhibits, to use their common sense, and that their memory of the testimony controls (which was also a written instruction). *See* 5/10/24 Hr'g at 10:54, 11:02, 11:03, 11:47, 3:09, 3:12, 3:20, 3:32. The Court also struck mentions of evidence that were not admitted. *See* 5/10/24 Hr'g at 11:23, 3:21, 3:23,[2] 3:31:43, 3:31:56. In addition, the Court overruled objections. 5/10/24 Hr'g at 3:28:27, 3:31:27. Finally, the Court reminded the jury that although they heard evidence about numerous other related cases being litigated, their task was to decide the issues raised in the present case. 5/10/24 Hr'g at 3:14, 3:30. The Court finds no error or prejudice in these rulings.

Defendants also lodged objections based on bias. 5/10/24 Hr'g at 11:51, 3:17, 3:26, 3:28:49, 3:30. Collectively, these objections responded to arguments by Wong that he was not the greedy attorney that Defendants painted him out to be. Wong gave examples such as that he has had to mortgage his home to assist his clients, that he wore just one coat throughout the two-week trial, and on three occasions, he said or implied that he would use the judgment in the present case to help his client pay for a judgment against them in another case. To the extent any of these statements imputed bias, the Court cured such bias by striking the statements that he

---

[2] At 3:23 and other times in the closing, Defendants objected that Wong was trying to group in Attorney Curtis Van de veld as one of the defendants. The Court directed Wong to cure any such inference, but the Court notes that Attorney Van de veld placed this issue before the jury himself in his opening statement when he cautioned the jury that Wong was going to try to rope himself in with Defendants. 4/29/24 Hr'g at 4:03.

ORIGINAL

mortgaged his own home (11:51) and that he wore one coat throughout the trial (3:17). Wong also withdrew a statement that he needed the judgment in this case to protect his clients in other cases (3:26).

Even if the curing was insufficient, these statements were not improper because they reflected evidence presented to the jury about Wong and his clients. At the outset, the jury was asked to make a determination of whether or not Wong committed fraud. As defined in the jury instructions, to be committed, "fraud" required confirmation of misrepresentations made with the intent to mislead others. *See* Jury Instrs. at 14 ("Affirmative Defense—Fraud in the Inducement"). Thus, Wong's credibility as an attorney was particularly at issue, reflected in the evidence of his representations made to opposing parties in numerous cases, his handling of his clients' interests, and his communication with his clients. In fact, Defendants emphasized Wong's lack of credibility in his opening statements as well as in the closing. 4/29/24 Hr'g at 3:32 ("good people can do bad things"), 3:45 (jury to decide Wong's credibility); 5/10/24 Hr'g at 1:51, 1:59 ("Mr. Wong lies."). Moreover, to prove Wong's lack of credibility, Defendants introduced evidence that Wong made an agreement with his clients that he be paid $5,000 per month—an amount which Wong argued that he never actually charged—and that he took mortgages out on their homes. Exs. 16. Wong was entitled to argue to the jury that he was not trying to cheat his clients.

Beyond being relevant to Wong's motives, the jury heard arguments and evidence concerning the parties' financial situations. For example, Defendants' opening statements referenced that Wong would try to argue that he was trying to help people who couldn't afford their attorney's fees, but that the jury will hear evidence that Wong was trying to collect money from his clients and secured promissory notes and mortgages: "So this notion that he just told


ORIGINAL

you about that this angelic thing he just did this because these people cannot afford to pay him is garbage, and you are going to hear that as the testimony comes up." 4/29/24 Hr'g at 4:21-22. In other words, Defendants squarely previewed to the jury to watch out for Wong's arguments relative to the poverty of his clients and the motives employed by Wong to help them. In turn, the jury also heard evidence that Wong's clients lost other litigation, resulting in judgments against them, involving Defendants. Ex. ZZZ. The jury knew that Wong's clients had purchased lots that initially lacked power, water and sewer lines. They also heard that Wong paid "second lot" payments for his clients who could not pay. 5/6/24 Hr'g at 2:57. Wong's closing arguments addressing Defendants' theory were not intended to induce bias but rather to address issues raised by Defendants.

Finally, when examining the objections made during the closing arguments, the Court also finds that this case differs from *HRC Guam Co.* with respect to the nature of the comments. The primary concern in *HRC Guam Co.* were xenophobic comments: "counsel repeatedly referred to the fact that Herrero, the beneficial owner of *HRC*, resides in Bermuda and appealed to the passions of the jury to send a message about the proper way to do business in Guam." 2017 Guam 24 ¶ 100. The Guam Supreme Court warned that "counsel may not characterize a party as 'trying to take advantage of the good people' in the local community. Nor may counsel urge a jury to punish a foreign investor for purposes of sending a signal to others that wish to do business locally." *Id.* ¶ 98. However, the Court also recognized that Herrrero's residence had some relevance, but that its relevance (that is, Herrero's credibility) was not the intention of raising it at closing. *Id.* ¶ 102.

Here, however, the Court does not find Wong improperly tried to appeal to the jury's passions or prejudices. On this point, the Court finds it necessary to address Defendants'

ORIGINAL

contentions that "despite [their] counsel's objection, Wong was allowed to inquire into the size and composition of the retirement home Mr. Gill is involved in constructing in the Philippines," and his businesses in Guam. Defs.' Mot. at 9 (May 16, 2024). Inquiry into Gill's business background was relevant to understanding the subdivision at issue. Moreover, Defendants did not—contrary to what is stated in their motion—lodge relevance objections to questions about the fact of his residence (or non-residence) in the Seychelles, the fact of Gill's retirement residence in the Philippines, where the residence is being built, how many living quarters he was constructing in the Philippines, or the size of his residence there. 5/8/24 Hr'g at 3:50-56. The only objection was to the number of units in his home, which was overruled; all other information was disclosed absent a relevance objection. Moreover, Gill himself volunteered that his residence included staff quarters, but also declared to the jury, "I'm from Guam." In other words, Defendants' counsel did not lodge objections, as they claim to have done, as to much of what was testified as to Gill's retirement residence in the Philippines. The review of the record reveals that their post-trial arguments that Wong unfairly painted Gill as an outsider do not match their objections lodged in the course of the trial. Even if there was improper inference by such evidence, the Court instructed the jury not to consider the wealth or poverty of any party. Jury Instrs. at 6.

In summary, to the extent the curing of any improper statements did not cure any alleged bias, the Court finds that Wong's intent in raising such issues speaks to relevant issues rather than inflaming the passions of the jury.

## IV.    CONCLUSION

The Court finds no basis to award judgment as a matter of law to Defendants or to order a new trial; thus, Defendants' motion is DENIED.



The Court moves to the final phase of this matter, which is to issue a judgment for the damages sought by Wong. The Court will proceed to consider Wong's May 14, 2024 Request for Entry of Judgment, and Defendants' May 17, 2024 Motion to Strike that request, and the briefing submitted relative to those two filings, and shall issue further Orders shortly.

**SO ORDERED, 11 December 2024.**

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Parties:
Wayson W.S. Wong, Esq., Law Offices of Wayson Wong, A.P.C., for Plaintiff Wayson Wong
Curtis C. Van de veld, Esq., The Van de veld Law Offices, P.C., for Defendants Cyfred, Ltd, and
    Leonard Francis Gill

ORIGINAL